UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-21990-DPG

RAJ JONES,

      Plaintiff,

v.

MIAMI-DADE COUNTY, *et al.,*

      Defendants.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants' Motion for Summary Judgment (the "Motion"). [ECF No. 41]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND[1]

Plaintiff Raj Jones ("Jones") brought this action against Defendants Miami-Dade County (the "County") and Director Daniel Junior ("Dir. Junior"), Captain Pablo Valdes ("Capt. Valdes"), Lieutenant Bonnett Johns ("Lt. Johns"), Commander Naeem Pervaiz ("Cmdr. Pervaiz"), and Lieutenant Anthony Aladro ("Lt. Aladro") (collectively, the "Officer Defendants") (together with the County, the "Defendants") alleging claims for race and national origin discrimination, retaliation, and hostile work environment based on race, national origin, and sex. The relevant facts are largely undisputed.

---

[1] The facts in this matter are gleaned from Defendants' Statement of Material Facts ("SOMF"), [ECF No. 40], and Plaintiff's Response to Defendants' SOMF. [ECF No. 44]

I.      Undisputed Facts

Jones, a Jamaican American man, began working for the County's Department of Corrections and Rehabilitation ("MDCR") as a correctional officer in 2008. In the beginning of 2020, the County placed Jones at its Pre-Trial Detention Center ("PTDC") on light restricted duty. There, he worked as a kitchen officer but was restricted from inmate contact. Capt. Valdes was Jones's supervisor at the PTDC.

A.      The Reports

On September 4, 2020, Jones contacted the Miami-Dade County Police Department. In his statement to police, Jones alleged that (1) Lt. Aladro touched his breast for two seconds on August 14, 2020; (2) he feared Lt. Aladro because he was a powerful supervisor who was friends with Capt. Valdes; and (3) he was "being harassed by high ranking homosexuals in the department." [ECF No. 40 ¶ 9-11]. That same day, Jones went to MDCR's Internal Affairs Bureau ("IAB") where he reported the alleged incident with Lt. Aladro and that Capt. Valdes was allowing a fraud ring to take place in the PTDC.[2]

B.      The Radio Transmission and Examinations

On September 4, 2020, after making his report, two sergeants arrived at the PTDC to take Jones to a reasonable suspicion toxicology examination. During the transport, Jones's radio made multiple transmissions to MDCR handheld radios where he made comments about staff and screamed and pleaded for help as if he was in imminent danger.[3] As a result, the PTDC Shift

---

[2] Jones went to the IAB three different times that week. On at least two of those occasions, he reported the purported fraud ring.

[3] Defendants assert that Jones made the radio transmission. [ECF No. 40 ¶¶ 16–17]. Jones disputes this "as far as there is no recording of the incident nor can it be determined which radio the transmission came from." [ECF No. 44 ¶¶ 16–17].

2

Commander placed the facility on lockdown to ensure that no one in the building was in danger. That same day, Jones was placed on paid leave pending the results of his toxicology examination.

On September 23, 2020, on the recommendation of Capt. Valdes, Cmdr. Pervaiz instructed Jones to undergo a fitness-for-duty examination. Following the examination, Jones emailed Cmdr. Pervaiz about comments the doctor made during the examination.[4] In response, Cmdr. Pervaiz sent Jones to another doctor and, again, Jones emailed Cmdr. Pervaiz about comments the second doctor made. Finally, Cmdr. Pervaiz sent Jones to a third doctor who cleared him to return to duty.

On January 8, 2021, Lt. Johns presented Jones with six disciplinary action reports ("DARs"). The DARs charged Jones with violating various sections of the County's "Personnel Rules." [ECF No. 40-1 at 185-195]. Lt. Johns told Jones that (1) despite being cleared, Jones could not return to work due to an ongoing administrative review and (2) Jones would have to attend a predetermination meeting with Dir. Junior to determine the extent and nature of his discipline. Jones then met with Dir. Junior.

Dir. Junior made the decision to terminate Jones; and, on July 9, 2021, Lt. Johns gave Jones two letters of termination. Dir. Junior terminated Jones based primarily on two disciplinary reports: "one for a social media violation and one for radio transmissions." [ECF No. 40-1 at 32:17-19]. At the time of Jones's termination, no non-black Hispanic or white employees had made unacceptable postings about MDCR on social media, screamed for help on MDCR radios, or caused a facility to be locked down. In addition, none of the Officer Defendants mentioned Jones's race in connection with his fitness-for-duty examinations, discipline, or termination or made derogatory comments about his race. Between September 4, 2020, the date Jones was placed on

---

[4] Jones disputes the substance of the comments but does not deny emailing Cmdr. Pervaiz about the doctors.

administrative leave, and his termination on July 9, 2021, Jones did not work in any correctional facility in Miami-Dade County.

Jones appealed his termination via arbitration. During the arbitration proceeding Jones was represented by an attorney, was given the opportunity to testify, and had witnesses testify. The arbitrator upheld the County's decision to terminate Jones.

C.     Discrimination Complaints

On September 24, 2020, Jones initiated an inquiry (the "Inquiry") with the U.S. Equal Employment Opportunity Commission ("EEOC") but did not complete a formal charge.[5]

On March 10, 2021, Jones completed an Intake Questionnaire with the County's Human Rights & Fair Employment Practices Division (the "Intake Questionnaire") alleging discrimination based on race, gender, sexual orientation, sexual harassment, and retaliation.

On February 7, 2022, the EEOC received Jones's charge of discrimination (the "EEOC Charge") alleging a history of retaliation, race and age discrimination, hostile work environment, and sexual harassment. [ECF No. 40-2].[6] On April 26, 2022, the EEOC issued its Determination and Notice of Rights.

II.     Procedural Background

On June 29, 2022, Jones filed this action alleging claims for discrimination, retaliation, and hostile work environment. [ECF No. 1]. On April 4, 2023, Jones filed an Amended Complaint asserting claims against the County for race and national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") (Counts 1 and 4), and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq.*, ("FCRA") (Count 18); Retaliation

---

[5] Exhibit 1 to Plaintiff's Response to Defendants' SOMF is a copy of a page from the EEOC website which notes that Jones initiated an "INQUIRY" on September 24, 2020, and a "CHARGE" on February 7, 2022. [ECF No. 44-1]. There is no additional detail on the document as to the Inquiry or Charge other than that they are both closed. *Id.*
[6] Jones does not recall when he filed the EEOC Charge.

under Title VII (Count 2) and the FCRA (Count 19); and hostile work environment under Title VII (Count 3) and the FCRA (Count 20) based on his race and national origin. Jones alleged claims against Dir. Junior, Capt. Valdes, Cmdr. Pervaiz, and Lt. Johns for race discrimination (Counts 5-8) and retaliation (Counts 10-13) in violation of 42 U.S.C. § 1983. He also asserts § 1983 hostile work environment claims, based on sex and/or his status as a Jamaican American male, against Lt. Aladro, Dir. Junior, Capt. Valdes, Cmdr. Pervaiz, and Lt. Johns (Counts 9 and 14-17) and a hostile work environment claim under the FCRA against Lt. Aladro (Count 21). Defendants now move for summary judgment as to all claims.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of her burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't*

*of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016) (citation omitted), *vacated on other grounds*, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (per curiam). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Furthermore, conclusory allegations will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted).

## DISCUSSION

Defendants argue that they are entitled to summary judgment as to all of Jones's claims because (1) the FCRA claims are barred for failure to exhaust administrative remedies; (2) Jones's claims are limited to adverse employment actions occurring on or after April 13, 2021; (3) Jones fails to establish his claims for race or national origin discrimination, retaliation, or hostile work environment; and (4) the Officer Defendants are entitled to qualified immunity.

I.  <u>Exhaustion of FCRA Claims</u>

Defendants argue that Jones failed to exhaust administrative remedies for his claims under the FCRA because the EEOC Charge does not allege any violations of the FCRA or reference the Florida Commission on Human Relations ("FCHR"). Florida Statute § 760.011(1) requires a plaintiff to exhaust administrative remedies before filing a FCRA action by filing a charge of discrimination with the FCHR or "with the federal [EEOC] or with any unit of government of the state which is a fair-employment-practice agency . . . ." § 760.11(1). While the statute clearly

contemplates dual filing of a charge, Florida district courts of appeal are split as to whether an EEOC charge that only alleges a violation of federal law is sufficient to comply with the exhaustion requirements of § 760.11. *Compare Belony v. N. Broward Hosp. Dist.*, 374 So. 3d 5, 7 (Fla. 4th DCA 2023) (holding that "when a discrimination charge only and specifically alleges a violation of federal law, the act of dually filing the charge with the FCHR is insufficient to comply with the requirements of section 760.11 . . . .") *with Ramos v. Steak N Shake, Inc.*, 376 So. 3d 100, 104 (Fla. 2d DCA 2023) (holding that plaintiff was "not required to specifically allege in his [EEOC] charge of discrimination that his claims were under the FCRA" to exhaust administrative remedies under § 760.11 and certifying conflict with *Belony*). Two judges in this district recently addressed the issue and agreed with the Florida Second District Court of Appeal's opinion in *Ramos*. *See Jackson v. Alto Experience, Inc.*, No. 23-CV-22319, 2024 WL 580354 (S.D. Fla. Feb. 12, 2024); *Almond v. Wells Fargo Bank, N.A.*, No. 23-23671, ECF No. 21 (S.D. Fla. Jan. 24, 2024). The Court agrees with the reasoning of *Ramos*, *Jackson,* and *Almond*, and finds that the EEOC Charge was sufficient to exhaust administrative remedies for his FCRA claims.

II.     Timeliness

Jones's claims are all limited in scope by the timing requirements for EEOC charges.

A.     Timing of the Charge of Discrimination

Title VII and the FCRA each require a plaintiff to file a charge of discrimination with the EEOC before filing suit in district court. *See Francois v. Miami Dade Cnty.,* 432 F. App'x 819, 821 (11th Cir. 2011). In deferral states, such as Florida, a plaintiff must file a charge of discrimination with the EEOC "within 300 days after the alleged unlawful employment practice occurred. . . ." 42 U.S.C. § 2000e-5(e)(1). In addition, FCRA claims are subject to a 365-day statute of limitations. *See Collins v. Miami-Dade Cty.*, 361 F. Supp. 2d 1362, 1378 (S.D. Fla. 2005). "A

claim is time barred if it is not filed within these time limits." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). "The plaintiff has the burden of establishing that he filed a timely charge of discrimination." *Boatwright v. Fla. Credit Union*, No. 22-12032, 2023 WL 3712289, at *1 (11th Cir. May 30, 2023) (citing *Jackson v. Seaboard Coast Line R. Co*., 678 F.2d 992, 1010 (11th Cir. 1982)).

Here, Jones relies on the September 24, 2020 Inquiry, the March 10, 2021 Intake Questionnaire, and the February 7, 2022 EEOC Charge to establish the timely filing requirements for Title VII and the FCRA. Of the three, only the EEOC Charge is sufficient.

The Eleventh Circuit has repeatedly held that "as a general matter an intake questionnaire is not intended to function as a charge." *Francois,* 432 F. App'x at 822; *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001). In exceptional circumstances, an inquiry[7] or intake questionnaire can qualify as a charge when "[it] was verified; [it] contained the basic information required by a charge; and the form's language could have been interpreted to represent a charge." *Francois,* 432 F. App'x at 821-22. Neither the Inquiry nor the Intake Questionnaire meet this standard. With respect to the Inquiry, Jones solely relies on a printout of the EEOC website which, other than listing the date Jones submitted the Inquiry, contains none of the information required by a formal charge. [ECF No. 44-1]. Indeed, at the Hearing on the Motion, Jones's counsel was unable to provide the Court with any information regarding the substance of the Inquiry and even conceded that it was *not* a formal charge. *See* Transcript of Hearing on Defendants' Motion (the "Hearing Transcript") [ECF No. 64, at 21:16-21].

---

[7] In 2017, the EEOC launched its Public Portal "and, for the first time, individuals were able to submit online inquiries and requests for intake interviews with the agency." *Martinez v. Prairie Fire Dev. Group, LLC*, No. 19-cv-2143-JWL, 2019 WL 3412264, at *4 n.1 (D. Kan. July 29, 2019). Although the Court was unable to find any cases in the Eleventh Circuit addressing online inquiries as opposed to intake questionnaires, in *Martinez*, the Court found "no reason why an online inquiry should be treated differently from an intake questionnaire or any other document short of a formal charge. The key, of course, is not the title of the document but whether the document meets the 'charge' requirements as set forth in *Holowecki*." *Id.* (citing *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).

Moreover, the Intake Questionnaire, filed with the County and not the EEOC, cannot be interpreted to represent a formal charge. Jones's filing of the EEOC Charge, after he submitted the Intake Questionnaire to the County, demonstrates that he "clearly understood the intake questionnaire was not a charge because he later filed a timely charge." *Francois,* 432 F. App'x at 822 ("Furthermore, the fact Francois filed an actual timely charge suggests he did not intend his intake questionnaire to function as a charge."); *see also Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004) ("Bost clearly understood that the intake questionnaire was not a charge because he later filed a timely charge. . . . Bost's conduct shows that he did not intend to activate the administrative process until he filed his formal charge of discrimination."). Accordingly, the Court finds that the Inquiry and the Intake Questionnaire do not constitute timely charges of discrimination.

Jones filed his EEOC Charge, the only operative charge, on February 7, 2022. Therefore, his only actionable claims under Title VII are those that arose on or after April 13, 2021 (300 days before February 7, 2022)). Jones's only actionable claims under the FCRA are those that arose on or after February 7, 2021 (365 days before February 7, 2022). Therefore, Jones's toxicology and fitness-for-duty examinations and placement on paid leave occurred before the window for actionable claims.[8] And, after he began his paid leave on September 4, 2020 through his

---

[8] Even if they were not time-barred, the Court finds that the alleged examinations do not constitute adverse employment actions. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that "requiring [employee] to undergo a psychological exam after [employee's] intemperate remark to a fellow employee [] is not an adverse employment action"); *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) ("[P]lacement of Nichols on paid administrative leave [for three months] pending the results of his fitness-for-duty psychological examinations did not constitute a materially adverse action."); *Lucas v. City of Delray Beach*, No. 21-CV-80469, 2023 WL 6037456, at *9 (S.D. Fla. Sept. 15, 2023), *appeal dismissed*, No. 23-13410-G, 2023 WL 9232155 (11th Cir. Nov. 6, 2023) (finding that paid leave and having to undergo psychiatric evaluation was not sufficient to constitute an adverse employment action).

termination on July 9, 2021, Jones was not in the workplace. Therefore, the only alleged adverse employment action falling within the limits of the EEOC charge is his termination on July 9, 2021.[9]

B.     Continuing Violations Doctrine

Though Jones does not specifically reference the continuing violations doctrine, he appears to suggest that the Court can still consider the toxicology examination, fitness-for-duty examinations, and placement on paid leave despite those acts occurring before the relevant time frame. The continuing violations doctrine permits an extension of the statutory limitations period where the discriminatory acts constitute a "continuing violation." *See Morgan,* 536 U.S. at 120; *Abram v. Fulton Cnty. Gov't,* 598 F. App'x. 672, 674-75 (11th Cir. 2015). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. The purpose of the continuing violations doctrine "is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Rager v. Augustine*, 760 F. App'x 947, 951 (11th Cir. 2019); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221-22 (11th Cir. 2001) ("The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.") (internal quotation omitted).

This Court's task, therefore, is to determine whether the alleged acts are discreet occurrences, such that most of them are time barred, or are part of a continuing violation, such that

---

[9] Jones's response to the Motion is not a model of clarity. As a result, it is not clear whether Jones is arguing that his paid administrative leave—occurring, in part, after April 13, 2021—is an adverse employment action. However, even if he had, the Court finds that paid administrative leave is not sufficient to constitute an adverse employment action. *Davis v. Legal Servs. Alabama, Inc.,* 19 F.4th 1261, 1268 (11th Cir. 2021) (dismissing discrimination claims and noting that a "paid suspension alone is not an adverse employment action").

Jones's claims dating back to September 4, 2020, may proceed. In *Morgan*, the Supreme Court distinguished between discrete acts of discrimination (such as termination, failure to hire, transfers, or failures to promote) and hostile-work environment claims. 536 U.S. at 114. It held that "[Title VII] precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period. . . . [A]nd that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. Accordingly, courts have found the continuing violations doctrine inapplicable in situations like this, where the plaintiff does not raise hostile-work environment claims and bases a claim on discrete acts of alleged discrimination. *See Abram*, 598 F. App'x. at 676 (finding continuing violations doctrine inapplicable where plaintiff did not raise a hostile-work-environment claim and all of her claims raised specific instances of the defendant's failure to grant her requested accommodations); *Tarmas v. Sec'y of Navy*, 433 F. App'x 754, 758 (11th Cir. 2011) (holding that  alleged denial of leave and stricter application of paid-leave requirements "were all single and discrete acts and did not constitute continuing violations"); *Varnado v. Mukasey*, No. 08-61331, 2010 WL 2196263, at *2 (S.D. Fla. June 1, 2010) (holding that biased evaluations, biased counseling, assignment of a substandard vehicle, suspension of cell phone usage, placement on sick leave, placement on performance improvement plan, and failure to promote were all discreet acts of discrimination and not part of a continuing violation).

As detailed below, Jones has not established a hostile work environment claim. *See infra* § V. Moreover, there is nothing in the record to suggest that any of the alleged discriminatory acts were not apparent at the time they occurred. Therefore, the Court finds that the continuing

violations doctrine does not apply to Jones's claims and will only consider his termination on July 9, 2021, as a basis for his claims.

III.     Discrimination Claims Based on Race or National Origin

Jones contends that the County terminated him because of his race (Counts 1 and 18) and national origin (Count 4). Title VII and the FCRA prohibit discrimination on the basis of race and national origin. *See* 42 U.S.C. §§ 2000e *et seq.*; Fla. Stat. § 760.10 *et seq.* The Court applies the same legal analysis to Title VII and FCRA discrimination claims that are based on the same set of facts. *Quigg v. Thomas County School Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (Title VII and § 1983); *Hampton v. City of South Miami*, 186 F. App'x. 967 n.2 (11th Cir. 2006) (Title VII and FCRA).

A plaintiff may pursue race discrimination claims under single-motive or mixed-motive theories. *Quigg*, 814 F.3d at 1235. A case brought pursuant to a single-motive theory is one "in which the employee alleges that unlawful bias was 'the true reason' for an adverse employment action." *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1321 (11th Cir. 2023) (quoting *Quigg*, 814 F.3d at 1235). A case brought pursuant to a mixed-motive theory is one "in which [a plaintiff] alleges that bias was simply *a* motivating factor for the adverse action, even though other factors also motivated the practice[.]" *Id.* (internal quotation omitted). Mixed-motive and single-motive theories of discrimination are not "distinct causes of action" but rather "serve as alternative causation standards for proving discrimination." *Quigg*, 814 F.3d at 1235 n.4. "At summary judgment, the ultimate question for all Title VII intentional discrimination claims is the normal standard: whether a reasonable jury could infer that the reason for the adverse employment action was illegal discrimination." *Buckhanon v. Opelika Housing Authority*, No. 22-13689, 2024 WL

887038, at *1 (11th Cir. 2024) (citing *Tynes v. Florida Dep't of Juv. Just.*, 88 F.4th 939, 946-47 (11th Cir. 2023)). Jones appears to argue a single-motive theory with respect to his termination.[10]

"To prevail under a single motive claim based on circumstantial evidence, a plaintiff must either satisfy the three-step burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or [present a] convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker . . . ." *Campbell v. Mayo Clinic*, No. 23-10966, 2024 WL 713921, at *1 (11th Cir. 2024) (internal quotation omitted). In his response to the Motion, Jones concedes that he cannot establish a prima facie case under *McDonnell Douglas*.[11] Rather, Jones contends that he's established a "convincing mosaic" of evidence that supports an inference of discrimination. The Court disagrees.

"A convincing mosaic may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements [ ], and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City,* 934 F.3d 1169, 1185 (11th Cir. 2019). Jones fails to do so. The record is devoid of evidence that any of the Defendants intended to discriminate against Jones based on his race or national origin. Indeed, Jones admits that despite making the decision to terminate him, Dir. Junior never made any derogatory comments about Jones's race or national origin. There are no ambiguous statements or suspiciously timed events that suggest a discriminatory motive, and there is no

---

[10] Even if Jones is proceeding under a mixed-motive theory, the record is devoid of any evidence that his race or national origin was a "motivating factor for [his termination], even though other factors also motivated the action." *Phillips*, 87 F.4th at 1327 (holding that to survive summary judgment on a mixed-motive theory, a plaintiff must "produc[e] evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff and[] (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action.") (internal quotation omitted).

[11] Specifically, Jones concedes that he cannot point to a comparator with whom he was similarly situated in all material respects. *See* [ECF No. 43 at 9]; *see also* Hearing Transcript at 31:2-9.

evidence in the record that similarly situated employees were treated better. Moreover, Jones has not challenged Defendants' proffered legitimate non-discriminatory basis for Jones's termination. *Holley v. Georgia Dep't of Corr.*, 845 F. App'x 886, 891 (11th Cir. 2021) (finding plaintiff failed to establish convincing mosaic of discrimination because he "did not present evidence that the [employer] acted arbitrarily, nor did he cast doubt on the [employer]'s proffered nondiscriminatory reasons" for rescinding his job offer).

While Jones attempts to challenge the facts underlying his discharge (*e.g.*, whether he was in fact the person who made the radio transmission), he has not sufficiently shown pretext via the convincing mosaic framework. *See Thomas v. Sheriff of Jefferson Cnty., Ala.*, No. 22-13875, 2023 WL 6534602, at *6 (11th Cir. Oct. 6, 2023). For the Court's analysis, it does not matter "whether the facts underlying the discharge are true but whether the employer believed them." *Id.* Accordingly, the Court finds no genuine issues of material fact as to Jones's race and national origin discrimination claims and finds that the County is entitled to summary judgment on Counts 1, 4, and 18.

IV.     Retaliation Claims

Jones brings claims for retaliation against the County under Title VII and the FCRA (Counts 2 and 19). These claims, all based on circumstantial evidence, are also evaluated using the *McDonnell Douglas* framework or the convincing mosaic analysis. *See Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1338 (11th Cir. 2023). Under the *McDonnell Douglas* framework, "a plaintiff must first make out a prima facie case by showing (1) [he] engaged in a statutorily protected activity, (2) [he] experienced an adverse employment action, and (3) causation." *Id.* at 1337. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* If the employer

meets its burden, "the plaintiff must show that the proffered reasons were pretext and the employer's real reason was retaliation." *Id.*

Under the convincing mosaic analysis, a plaintiff will survive summary judgment if he presents evidence "that raises a reasonable inference" of retaliation." *Id*. at 1342. This can be shown through "(1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly situated employees, and (3) pretext. . . . At the end of the day, a retaliation plaintiff's 'mosaic' of evidence must still be enough to allow a reasonable jury to infer but-for causation." *Id.*; *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (Retaliation claims require "proof that the desire to retaliate was the but-for cause of the challenged employment action.").

Jones has established that he engaged in protected activity when he reported Lt. Aladro to IAB and the police and when he filed the Inquiry with the EEOC and the Intake Questionnaire with the County. However, Jones has not established a causal connection between the protected activity and his termination. To establish a causal connection, Jones must establish that his "protected activity was a but-for cause of the alleged adverse action." *Nassar*, 570 U.S. at 362. "Stated another way, [Jones] must prove that had [he] not complained, [he] would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). There is nothing in the record to suggest that Jones's complaints were the but-for-cause of his termination. Rather, the record reflects that Jones was the subject of six DARs detailing his violation of department rules. [ECF No. 40-1 at 185-195]. At this stage, where [Defendants'] burden is exceedingly light, all [Defendants] must do is produce evidence that it had a legitimate reason for its decision." *Yelling*, 82 F.4th at 1341.[12]

---

[12] Jones's Response argues that the reasons provided by Defendants are pretext because Jones had previously filed complaints and because "[n]o one in the history of Miami-Dade County ha[s] been fired for a transmission or a

Moreover, the three-month gap between Jones's latest-filed grievance, the March 10, 2021, Intake Questionnaire, and his eventual termination on July 9, 2021 militates against a finding of causation. *See Rives v. Lahood,* 605 F. App'x 815, 819 (11th Cir. 2015) (finding "three-and-one-half-month delay" between filing of EEOC complaint and AEA was "too long to establish the requisite causal link" for retaliation claim); *Thomas v. CVS Pharmacy*, 336 F. App'x 913, 915-16 (11th Cir. 2009) (finding that "[t]hree and a half months is too long a delay to support a causation finding absent other evidence of retaliatory intent[.]"); *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). Thus, the Court finds no genuine issues of material fact as to Jones's retaliation claims against the County and finds that the County is entitled to summary judgment on Counts 2 and 19.

V.    Hostile Work Environment

Jones also fails to establish a hostile work environment claim against the County. "A hostile work environment claim under Title VII requires proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fernandez v. Trees*, 961 F.3d 1148, 1152 (11th Cir. 2020) (quoting *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993)).

To prevail on his hostile work environment claim, a plaintiff must prove: "(1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a

---

Facebook post." [ECF No. 43 at 10]. Jones provides no evidence in support of either bare assertion. Moreover, "to establish pretext at the summary judgment stage, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence. A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason." *Gogel v. Kia Motors Mfg. of Georgia, Inc*., 967 F.3d 1121, 1136 (11th Cir. 2020) (cleaned up). Jones has provided no evidence showing that the reasons provided by Defendants are false and, therefore, has failed to establish that the reasons proffered were pretextual.

protected characteristic of the employee such as [race]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible under a theory of either direct liability or vicarious liability." *Id.* at 1553. To establish that the harassment is "sufficiently severe or pervasive . . . [t]he employee must subjectively perceive the harassment as sufficiently severe and pervasive . . . and this subjective perception must be objectively reasonable." *Yelling*, 82 F.4th at 1335 (internal citations omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation omitted). In making this determination, courts consider "(1) the conduct's frequency, (2) its severity, (3) whether it was physically threatening or humiliating, rather than 'mere offensive utterance[s],' and (4) whether it unreasonably interfered with the employee's job performance." *Id.* (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997)).

Here, the record is devoid of evidence that Jones suffered a hostile work environment based on his race, national origin, or sex. Jones argues that his repeated examinations are the basis of his hostile work environment claims.[13] However, these isolated tests—necessitated, at least in part, on Jones's own behavior—do not amount to the severe, pervasive, and humiliating conduct required to bring a viable hostile work environment claim. *See Shine v. Univ. of Ala. – Birmingham,* No. 22-10333, 2023 WL 1099766, at *3 (11th Cir. Jan. 30, 2023) ("Isolated or sporadic incidents of harassment are not objectively severe or pervasive enough to alter the terms or conditions of employment."). Moreover, there is no evidence that anyone at the County made any comments about Jones's race, national origin, or sex. As a result, the Court finds no genuine issue of material

---

[13]   The record is devoid of any additional evidence of harassing conduct that falls within the statutory time period. Indeed, Jones did not work at any County correctional facility after September 4, 2020, the start date of his paid leave.

fact as to Jones's hostile work environment claims (insofar as they are premised on race, national origin, or sex) and finds that the County is entitled to summary judgement on Counts 3 and 20.

VI.    <u>Retaliatory Hostile Work Environment</u>

Jones's hostile work environment claims, much like his others, are not the model for clear and concise pleading. It appears that in addition to bringing hostile work environment claims premised on discrimination, Jones avers that the hostile work environment he faced was also retaliatory. The Eleventh Circuit has recognized hybrid retaliatory-hostile-work-environment as separate claims in the Title VII context. *Buckley v. Sec'y of Army*, 97 F.4th 784, 799 (11th Cir. 2024). However, "retaliatory-hostile-work-environment claims are really retaliation claims rather than hostile-work-environment claims." *Id.* (cleaned up). Therefore, rather than applying the "higher and more exacting" severe and pervasive standard of traditional hostile work environment claims, a court should ask "whether the employer's complained-of action well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Buckley*, 97 F.4th at 799; *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1207 (11th Cir. 2021) (internal quotations and citations omitted). Additionally, just as with traditional retaliation claims, a plaintiff must still establish the causal link between the protected activity and the harassment. *Buckley*, 97 F.4th at 800.

Given that Jones has failed to sufficiently show a causal connection between the aggrieved hostilities (namely the examinations) and the filing of his complaints, the Court need not reach whether the hostilities would have dissuaded a reasonable worker from making a charge of discrimination. *See Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1357 (11th Cir. 2024) (affirming district court's granting of summary judgment on retaliatory-hostile-work-environment claim when plaintiff "ha[d] not shown that any hostility was casually connected to her EEO

complaint."); *Buckley*, 97 F.4th at 800 (affirming summary judgment on hybrid retaliatory hostile work environment claim for failure to establish causal link between the protected activity and harassment even though plaintiff met her burden in showing the alleged harassment "would have dissuaded a reasonable worker from making or supporting a charge of discrimination").

VII.    <u>1983 Claims Against the Officer Defendants</u>[14]

Jones raises § 1983 claims against the Officer Defendants for race discrimination (Counts 5, 6, 7, and 8), retaliation (Counts 10, 11, 12, and 13), and hostile work environment based on national origin and sex (Counts 9, 14, 15, 16, and 17). The Officer Defendants argue that they are entitled to qualified immunity on these claims. Jones argues that the Officer Defendants are not entitled to qualified immunity because they violated his constitutional right to work as a corrections officer. In his Response to the Motion and in his counsel's arguments at the Hearing, Jones argued that the Officer Defendants violated his "constitutional right to employment." [ECF No. 43 at 4]. To the extent that Jones's § 1983 claims are based on race discrimination, retaliation, and hostile work environment, they fail for the same reasons his claims against the County fail. Therefore, the Court only considers Jones's claims against the Officer Defendants for deprivation of his purported constitutional right to employment.

"Qualified immunity provides complete protection for government officials sued in their individual capacities where their conduct does not violate clearly establish statutory or constitutional rights of which a reasonable person would have known." *Quinette v. Reed*, 805 F. App'x 696, 701 (11th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))

---

[14] Jones did not respond to Defendants' SOMF and arguments regarding his hostile work environment claim against Lt. Aladro (Count 9). Accordingly, based on the undisputed material facts demonstrating that Lt. Aladro did not subject Jones to a hostile work environment based on his sex, summary judgment shall be entered in favor of Lt. Aladro as to Count 9. *Broes v. Boyce*, 629 F. Supp. 3d 1324, 1334 (N.D. Ga. 2022), *aff'd sub nom. Broes v. Hall Cnty. Georgia Dist. Att'y*, No. 22-13914, 2023 WL 6620286 (11th Cir. Oct. 11, 2023). Additionally, in his response to the Motion, Jones conceded that his FCRA hostile work environment claim against Lt. Aladro (Count 21) is barred. [ECF No. 43 at 5]. Accordingly, summary judgment shall also be entered in favor of Lt. Aladro as to Count 21.

(internal quotation marks omitted). A government official must have been acting within the scope of their discretionary authority when the challenged conduct occurred. *Id.* It is undisputed that the Officer Defendants were acting within the scope of their employment when they required Jones to submit the toxicology tests and fitness-for-duty examinations and when Dir. Junior terminated Jones. Therefore, the burden shifts to Jones to show that qualified immunity is not appropriate. *Hardway v. Dickerson*, 735 F. App'x 1003, 1005 (11th Cir. 2018). To prove that the Officer Defendants are not entitled to qualified immunity, Jones must show (1) the Defendant Officers violated a constitutional right and (2) "that right was clearly established." *Id.* "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted).

Jones has not met his burden of showing that the Officer Defendants violated a *clearly established* constitutional right. Jones argues, in a conclusory fashion, that the Officer Defendants violated his "constitutional right to work for Miami-Dade County as a Corrections Officer . . . ." [ECF No. 43 at 4-5]. Without more, this is insufficient to show the deprivation of a constitutional right. *See Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) ("A plaintiff cannot avoid the qualified immunity defense by referring to general rules and to the violation of abstract rights.") (internal quotation omitted). Indeed, Jones fails to show how he has a protected property interest in his employment. *See Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991) ("To obtain a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment.").

Moreover, the Eleventh Circuit has held that property rights in continued public employment raise only procedural due process concerns. *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 2003) ("As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed."). Jones does not assert a procedural due process claim. He does not argue that the procedures afforded by the County, including the arbitration proceeding he participated in, violated his due process rights. Even if he had, the Court finds that that Jones's due process rights were not violated. *See McKinney,* 20 F.3d at 1557 (holding that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."); *McGirt v. Broward Coll.*, No. 15-CV-62324, 2017 WL 1153849, at *6 (S.D. Fla. Mar. 28, 2017) (finding that employer did not violate plaintiff's procedural due process rights when plaintiff "attended post-termination arbitration, where [he was] represented by counsel, testified, called witnesses, and cross-examined the City's witnesses."). Accordingly, the Court finds that the Officer Defendants are entitled to qualified immunity on Counts 5-8 and 10-17.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED as follows:

(1) Defendants' Motion for Summary Judgment, [ECF No. 41], is **GRANTED**.

(2) This action is CLOSED, and any pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of August, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE